## SWEARINGEN *against* PENDLETON.

If a deposition be drawn by an attorney, agent, party, or relation of a party having or feeling an interest in the cause in which it is to be read, it is good ground for rejecting it.

The facts that a deposition which was thus written, had been filed a number of years, and read on a former trial of the cause before arbitrators, and in court without objection, do not so alter the case, as to make the deposition evidence, when objected to.

ERROR to the Common Pleas of *Washington* county.

This was an action of covenant in which *Philip C. Pendleton* and others, executors of *Philip Pendleton*, were plaintiffs, and *Elizabeth Swearingen*, executrix of *Andrew Swearingen*, who was the surviving executor of *Van Swearingen*, was defendant. There was a former suit between these same parties previously to 1807. In 1814 it was tried, and a verdict and judgment rendered for the plaintiff;—in 1818 this judgment was reversed. In this suit a commission issued to Virginia to take the testimony of witnesses, which was returned and filed in 1807. These depositions were offered in evidence in the present suit, which was brought in 1826; they were objected to by the defendant, on the ground that they were in the hand-writing of *Philip C. Pendleton*, one of the plaintiffs. The proof satisfied the court of this fact; but it appearing, also, that they had been filed in court in 1807, read on the trial of that cause before arbitrators and in court, without the objection which is now made, and that the deponents are dead; the objection was over-ruled; to which the defendants excepted.

(Swearingen *v.* Pendleton.)

*Leet* and *W. Forward* for plaintiff in error.

A deposition written by an attorney, agent, or party, cannot be read. *Summers* v. *McKim,* 12 *Serg. & Rawle,* 405. *Addleman* v. *Masterson,* 1 *Penn. Rep.* 454. *Patton* v. *Patton,* 1 *Penn. Rep.* 200. The fact of its having been read before arbitrators does not differ the case. *Cox* v. *Norton,* 1 *Penn. Rep.* 412. *Staret* v. *Chambers,* 2 *Yeates,* 232, in note. 1 *Harris & McHen.* 230.

*McKennan* and *Ewing* for defendants in error,

Contended that it was the duty of the party, under the strong circumstances of this case, to give notice of their objection, and ask the court to suppress the depositions. They, suffering them to be read at different periods of the controversy between the parties, thus lulled the plaintiffs into security until the time when such objection would be fatal. This is not that fairness which the law will sanction. *Carpenter* v. *Groff,* 5 *Serg. & Rawle,* 162. 3 *Stark.* 1249. *Strickler* v. *Tod,* 10 *Serg. & Rawle,* 73. *Hook* v. *Hackney,* 16 *Serg. & Rawle,* 389. *Sheeler* v. *Spear,* 3 *Bin.* 130. *McKim* v. *Somers,* 1 *Penn. Rep.* 305. 7 *Wheaton,* 453. 1 *Stark.* 269. 2 *Mad. Chan.* 412.

The opinion of the court was delivered by

Ross, J.—The error in this case depends upon the solution of the question, whether the court was right in admitting the depositions of *James Wilson* and *Abraham Shepherd,* Esquires, taken by virtue of a commission on interrogatories, filed the third day of July, 1807. During the argument, many points have been made and pressed upon the court for their consideration. It has been strenuously urged, that the depositions, having been on file for many years, if there existed any objection to them, the defendant's counsel should have moved to suppress them, or should have advised the plaintiff of the objection. There is no doubt, that in England Courts of Chancery exercise the power of suppressing depositions. 2 *Mad. Chan.* 412. But certainly, it has never been decided in this state, that our courts can exercise this power. The case of *Carpenter* v. *Groff,* 5 *Serg. & Rawle,* 166, has been referred to as authorizing such a course. That, however, was not the question either decided, or under the consideration of the court in determining that case. It was a mere *dictum* of the chief justice, and uttered probably without much reflection. Neither is the case of *Hook* v. *Hackney,* in 16 *Serg. & Rawle,* 389, at all in point. The principle upon which that case was decided, is not applicable to this case. The fact is, that it still remains to be decided, that our courts can exercise the power of suppressing depositions upon mere motion, previous to the trial. At any rate, it is a doctrine to which I cannot at present yield an assent. Counsel are under no

(Swearingen *v.* Pendleton.)

obligations to apprise the adverse party of the objections intended to be made to the evidence. The effect of such a rule would be, not only to deprive the party of making an objection at the time of trial, of which no notice had been given, but would in most cases be calculated to compromit the interests of the client, and would be dangerous in the extreme.

It is said, that the period which has elapsed since these depositions were taken, was sufficient to remove any objections to their being read in evidence. If the lapse of time can operate to take away the party's legal rights, it could only be calculated from the period, when the knowledge of the facts, upon which the objection is founded, was first ascertained or disclosed. And therefore, in this case, the time that has elapsed is that which intervened between the Saturday evening preceding the trial and the day of the trial when the objection was made. It was not until Saturday evening, that the defendant's counsel became acquainted with the fact of the depositions being in the hand-writing of one of the parties in interest. There was, therefore, no unreasonable delay in making the objection, even admitting, that the lapse of time may affect the rights of a party, who neglects to take advantage of his knowledge in a reasonable time. This is not such a case. But it is also said, that the death of the witnesses, which is the consequence of the lapse of time, would authorize the reading of these depositions in evidence. The death of witnesses may, it is true, justify the admission of depositions in evidence; but it cannot make incompetent testimony competent. I am not aware of any case, in which it has been held, that a radical defect in the taking of a deposition, has been cured by the death of the witness.

It is argued, that the depositions having been read on the former trial, and also to the arbitrators, without any objection being at that time made, they were therefore afterwards admissible, although objected to. This position is neither consistent with law nor common sense, and is contrary to the experience and practice of every professional man. It does not appear that the party knew at the time these depositions were read on the former trial, that they were in the hand-writing of *P. C. Pendleton.* Indeed *Isaac Leet* proves directly the reverse. He says, "the counsel for the defendants did not know that the depositions were in the hand-writing of *Pendleton.*" It is a settled principle of law, that the admissions of a party not acquainted with his legal rights, are not binding. Independent of the general principles of the law on this subject, the reading of the depositions, without objection, on a former trial, cannot impair the right of the defendant to make the objection on a subsequent trial. Counsel, in the hurry of trial, may overlook a legal objection, which may afterwards, in another trial of the same case, occur to him; or which more experienced counsel, subse-

quently retained, may notice.    And to decide, that such objection could not be made, would be adopting a doctrine not only pregnant with injustice, but repugnant to every principle of law.    Indeed, in many cases new trials are granted merely because illegal evidence has been inadvertently admitted.    This question has, however, been already decided by this court in the case of *Cox* v. *Norton,* 1 *Penn. Rep.* 416, where it was held, that the fact of a paper having been given in evidence before arbitrators without objection, was no reason why it should be admitted upon the trial in court, if it were otherwise illegal.

The general doctrine, that the deposition of a witness shall not be written, or drawn by the party, his agent, attorney, or any other person engaged in assisting him to conduct the suit, is, I trust, too well established ever to be shaken; and I trust, that this court will continue to decide upon the same principles, as are laid down in *Summers* v. *McKim,* 12 *Serg. & Rawle,* 410, and which are so fully approved of by *Justice Rogers,* in *Addleman* v. *Masterson,* 1 *Penn. Rep.* 457. 2 *Penn. Rep.* 200.    *P. C. Pendleton,* who drew these depositions, was an attorney, and a party in interest.    The most remote interest or relationship likely to produce a feeling or influence in favor of the one side, and against the other, should always be sufficient to reject a deposition drawn by a person so situated.    It is the duty of the court, and the object is certainly a laudable one, to provide every guard and protection against even the possibility of a bias in the taking of depositions, which species of evidence has indeed of late years almost supplied the place of oral testimony, the best safeguard against corruption, and the favorite of the common law.

The court having erred in admitting the depositions, the judgment must be reversed, and a *venire de novo* awarded.

Judgment reversed, and a *venire de novo* awarded.